## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

AMERICAN NEIGHBORHOOD
MORTGAGE ACCEPTANCE COMPANY,
LLC d/b/a ANNIEMAC HOME
MORTGAGE,

                Plaintiff,

       v.

CROSSCOUNTRY MORTGAGE, INC.,
TODD BAILEY, SHAWN MILLER and
STEVEN LO BUE

                Defendants.

Civil Action

### COMPLAINT

Plaintiff American Neighborhood Mortgage Acceptance Company, LLC d/b/a AnnieMac Home Mortgage ("Annie Mac" or the "Company"), by way of its Complaint against Defendants, Todd C. Bailey ("T. Bailey"), Shawn Miller ("Miller"), Steven Lo Bue (individually "Lo Bue" and collectively with T. Bailey and Miller, the "Individual Defendants") and CrossCountry Mortgage, Inc. (individually "CrossCountry" and together with the Individual Defendants, the "Defendants") states as follows:

### PRELIMINARY STATEMENT

AnnieMac brings this action against Defendants for breach of contract and other common law duties, intentional interference with contractual and prospective economic relations, the use of false representations and misrepresentations to pass of their services as those of Annie Mac in violation of the Lanham Act and violations of state and federal law protecting trade secrets and confidential information. The Individual Defendants blatantly accepted positions with CrossCountry months before leaving AnnieMac's employ and used their final weeks to improperly divert and disclose as much borrower information as possible so that they could transfer their

pipeline of loans to CrossCountry. Like a Trojan Horse, the Individual Defendants spent their final weeks appearing to work on AnnieMac's benefit, all while putting in place their plan to loot and pillage their respective branches for CrossCountry's benefit.

Defendants conspired to remain employed at Annie Mac for the purpose of abusing their trust and confidence as managers to solicit and lure subordinate employees they were entrusted to supervise, into accepting employment with Cross Country. CrossCountry was not only fully aware of these actions and facilitating them, it provided the Individual Defendants with specific protocols on how to do so. CrossCountry employees held the Individual Defendants' hands to maximize the number of loans and co-workers diverted from AnnieMac to CrossCountry.

Further, despite contractual obligations expressly prohibiting them from doing so, the Individual Defendants solicited the other employees at their branch to assist in these endeavors and to also leave AnnieMac for CrossCountry. Effectively, the Individual Defendants destroyed two of AnnieMac's branches, leaving not a single employee after their departure. The following allegations set forth the relevant and supportive facts:

## PARTIES

1.    AnnieMac is a licensed mortgage lender incorporated under the laws of the State of New Jersey with its headquarters and principal place of business located at 700 East Gate Drive Mount Laurel, New Jersey 08054.

2.    CrossCountry is a licensed mortgage lender incorporated under the laws of the state of Ohio with its headquarters and principal place of business located at 6850 Miller Road, Brecksville, Ohio 44141.

3.    Defendant T. Bailey is an adult individual and resident of the State of New Jersey, residing at 19 Harwood Place, Wayne, New Jersey 07470. Defendant T. Bailey was employed by AnnieMac

2

as co-Branch Manager and loan offer, in the office located at 18-19 River Road, Suite A, Fair Lawn, New Jersey, 07410 (the "Fair Lawn Branch").

4.      Defendant Miller is an adult individual and resident of the State of New Jersey, residing at 120 Stonegate Trail, Cresskill, New Jersey 07626. Defendant Miller was employed by AnnieMac as co-Branch Manager and loan offer, in the office located at 401 Hackensack Ave, Suite 804 8th Floor, Hackensack, New Jersey, 07601 (the "Hackensack Branch").

5.      Defendant Lo Bue is an adult individual and resident of the State of New Jersey, residing at 1 Susan Lane, Saddle Brook, New Jersey 07663. Defendant Lo Bue was employed by AnnieMac as co-Branch Manager and loan offer, in the office located at 401 Hackensack Ave, Suite 804 8th Floor, Hackensack, New Jersey 07601 (the "Hackensack Branch").

## JURISDICTION AND VENUE

6.      Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §§ 1331 and 1367 as the claims arise under the laws of the United States.

7.      In the alternative, jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 and the citizenship of Defendants is diverse from that of the Plaintiff.

8.      This Court has personal jurisdiction over the Individual Defendants because they are residents of the State of New Jersey.

9.      This Court has personal jurisdiction over CrossCountry because of its intentional contacts with the State of New Jersey. Specifically, CrossCountry has continuous and systematic contact with New Jersey and regularly conducts business in New Jersey through its branch locations in East Rutherford, Hoboken, Cranford, North Bergen, Rochelle Park, Hackensack, Parsippany,

Bridgewater, Montvale, Old Bridge, Marlboro, Neptune, Allentown, Toms River, and Moorsetown New Jersey.

10.    In addition, CrossCountry has contacts arising from AnnieMac's causes of actions whereby CrossCountry intentionally engaged in tortious conduct aimed at the State of New Jersey.

11.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims asserted herein occurred in this District, and Defendants are subject to jurisdiction in this District.

## FACTS

### AnnieMac and the Individual Defendants' Employment

12.    In April 2015, AnnieMac hired T. Bailey as co-branch managers of the Fair Lawn, New Jersey office.

13.    In December 2017, AnnieMac hired Miller and Lo Bue as co-branch managers of the Hackensack, New Jersey office.

14.    Miller and Lo Bue have worked together in the past.  In fact, they have a history of traveling together from company to company.

15.    For example, they both worked at FCC Mortgage Corp. prior to joining AnnieMac together in 2017.  They then AnnieMac for CrossCountry together.

16.    Lo Bue is now the highest level of management with CrossCountry.

17.    All of the Individual Defendants executed Branch Manager Employment Agreements with AnnieMac at the inception of their employment setting forth the terms and conditions of their employment, as well as post-termination obligations and restrictions.

18.     A true and accurate copy of each Individual Defendant's Employment Agreement is attached hereto.[1]

19.     The post-termination obligations and restrictions provided in these agreements state that the Individual Defendants are not permitted to:

  a.     "… disclose any Confidential Materials or use such material in any way …"

  b.     "Directly or indirectly interfere with AnnieMac's business;" or

  c.     "Solicit, attempt to hire or hire any personnel (employees, independent contractors or agents of [AnnieMac]" or any of AnnieMac's "customers or prospective customers … ." during their employment and for a period of one (1) year thereafter.[2]

20.     As branch managers, the Individual Defendants were responsible for the day-to-day operations of their respective branches; at all times subject to the ultimate supervision, control and direction of the principals and senior management of AnnieMac.

21.     Further, the Individual Defendants were tasked with enforcing AnnieMac's policies and protecting the Company from violations of laws.

22.     In giving the Individual Defendants this authority, AnnieMac put its utmost trust in them to act at all times in the Company's best interest.

23.     In addition to the contractual obligations owed to AnnieMac, the Individual Defendants had statutory and common law obligations to comply with their fiduciary obligations and duties of loyalty to AnnieMac while they were employed by AnnieMac (and receiving significant compensation from AnnieMac).

---

[1] A copy of T. Bailey's Employment Agreement ("T. Bailey Agreement") is attached hereto as Exhibit A; a copy of Shawn Miller's Employment Agreement ("Miller Agreement") is attached hereto as Exhibit B; and a copy of Steven LoBue's Employment Agreement is attached hereto as Exhibit C.
[2] Exhibits A-C, ¶¶ 4.4.

24.    The Individual Defendants were legally obligated to protect AnnieMac's confidential information and trade secrets and its borrowers' non-public information.

25.    The Individual Defendants were subject to requirements of the Department of Housing and Urban Development and the National Mortgage Licensing System, and required to work for only one lender and to properly disclose to borrowers the lender with whom the borrowers were engaged.

26.    The Individual Defendants similarly had common law and statutory duties not to encourage, aid or abet employees to steal AnnieMac's trade secrets or breach their fiduciary obligations to AnnieMac or to unfairly compete with AnnieMac.

27.    The Individual Defendants were entrusted with AnnieMac's leads, customer loan applications, marketing strategies, consumer and loan lists, consumer identifying and financial information and pricing information, and were expected to use such resources to originate loans to be funded by and through AnnieMac.

28.    Moreover, such information was to be maintained exclusively for AnnieMac's benefit and was not to be disclosed outside of AnnieMac.

29.    A borrower who is using or considering using AnnieMac's services provides AnnieMac with a wide variety of personal and confidential information, including Social Security numbers, dates of birth, contact information, sensitive credit history, wage statements, bank account numbers, mortgage amounts, tax returns, and all the financial information that is necessary to facilitate a home loan.

30.    AnnieMac's prospective customers provide this highly sensitive private and confidential information with the understanding AnnieMac will protect it. AnnieMac is required to maintain the

privacy of this information by extremely strict federal laws that carry substantial penalties if violated.

31.    AnnieMac does not release, share, or disclose such confidential information to the general public. AnnieMac maintains the secrecy of this confidential information and derives an economic and competitive advantage from maintaining the secrecy of such information.

32.    If a competitor obtained this information, it could undercut AnnieMac on AnnieMac's loans and divert AnnieMac's consumers by aggressively pursuing those consumers based on the information kept by AnnieMac.

**Miller and LoBue Leave for CrossCountry**

33.    On or around May 2019, Miller began secret discussions with CrossCountry to leave AnnieMac and work for CrossCountry.

34.    On June 4, 2019, Miller received an email from CrossCountry, which included a written offer of employment dated May 28, 2019.[3]

35.    Throughout July 2019, Miller sent AnnieMac borrower information and CrossCountry loan applications for borrowers initiated in AnnieMac's system, to his personal email address.

36.    After Miller left Annie Mac, Anuradha Jagadeesan, the loan processor who reported to him at Annie Mac, remained employed and continued to assist him in diverting files to Cross Country. Ms. Jagadeesan ultimately left Annie Mac and joined Miller as his subordinate employee at Cross Country.

37.    AnnieMac has reviewed its Loan Operating System and the majority of the loans identified herein were not closed with AnnieMac.

38.    For example:

---

[3] CrossCountry's offer letter to Miller is attached hereto as Exhibit D.

a. On July 10, 2019, Miller forwarded himself bank statements for borrower Sanchez. This loan did not close with AnnieMac.

b. On July 16, 2019, Miller sent a CrossCountry Borrower's Certification and Authorization prepared for borrowers Kumar and Sharma to his personal email address. Miller also forwarded himself credit information sent to him by Anuradha Jagadeesan, then an AnnieMac Loan Processor, for these borrowers. These loans did not close with AnnieMac.

c. On July 17, 2019, Miller sent a CrossCountry loan application for borrower Travisano to his personal email address. This loan did not close with AnnieMac.

d. On July 17, 2019, Miller sent information on the Lipari loan sent to him from Karen Nobile, then an AnnieMac Processor, to his personal email address. This loan did not close with AnnieMac.

e. On July 25, 2019, Miller sent a state required notice to the buyer for borrower De La Cruz to his personal email address. This loan did not close with AnnieMac.

f. On July 30, 2019, Miller sent paystubs and other checks for borrower Donato to his personal email address. This loan did not close with AnnieMac.

39. Moreover, during this time and while still employed by AnnieMac, Miller was actively recruiting AnnieMac's employee, as well as other candidates, to join CrossCountry.

40. On August 2, 2019, Lo Bue left AnnieMac and joined CrossCountry.

41. In the days following, three of Lo Bue's employees at the Hackensack Branch joined him at CrossCountry, clearly due to his solicitation of them.

42. On August 4, 2019, Miller left AnnieMac and joined CrossCountry.

43.    In addition, on August 9, 2019, Richard Tantillo and Anuradha Jagadeesan also left AnnieMac for CrossCountry.

44.    As of August 9, 2019, no employees remained at AnnieMac's Hackensack Branch.

45.    According to CrossCountry's website, Miller is now the Branch Manager and operates the Hackensack Branch out of the same location as the former Annie Mac branch.

46.    At Cross Country Miller and multiple former Annie Mac employees, including but not limited to the remaining Individual Defendants all report to Lo Bue, who is the Regional Vice President at CrossCountry.

47.    Lo Bue was the first Annie Mac employee from the Hackensack Branch to join Cross Country and encouraged the other employees from that Branch to leave to join CrossCountry.

48.    Lo Bue was also aware of and/or encouraged the actions of Shawn Miller as set forth herein.

**T. Bailey Leave for CrossCountry**

49.    In the summer of 2019, T. Bailey also had secret discussions with CrossCountry to join as a branch manager.

50.    In July 2019, CrossCountry sent T. Bailey an offer of employment was made and memorialized in writing on July 25, 2019.[4]

51.    On August 8, 2019, William Myers, Production Manager from CrossCountry, sent T. Bailey an email entitled "CrossCountry Mortgage Loan Transition Procedures."[5]

52.    This email states:

> Good Evening Todd and Team, Congratulations on joining the CrossCountry Mortgage [sic]! Our entire team looks forward to working with you. Rest assured that with your cooperation our entire team will ensure a very smooth and pleasant onboarding. Now it's time to start transitioning your loans and building your

---

[4] T. Bailey's July 25, 2019 Offer Letter is attached hereto as Exhibit E.
[5] Transition Procedures Email attached hereto as Exhibit F.

pipeline. Please allow this email is to provide important details regarding transitioning loans. I would appreciate it if you would share this or discuss with each of your team members. Your Transition Loan Originator is Jon Wick. Our ultimate goal is to keep you connected to the borrower throughout the entire loan process. Once we are ready to disclose the file you will be notified so you can contact the borrowers and advise them that this is being done. This is also the time where you should advise them that the appraisal will be ordered soon and payment will be required unless you're invoicing the cost of the appraisal. You will also be notified when the loan is approved and what conditions are outstanding so that you can encourage your borrowers to return conditions to my team as quickly as possible. We would prefer for this transition/onboarding that all communication regarding status updates and outstanding conditions be communicated directly to the referring originator and then he/she can share with whomever. **Once transition officially begins, you will receive pipeline updates nightly sent to your personal email or company email from my team.** Please review this spreadsheet closely as it will provide you with a tremendous amount of information on the progression of the file. Please pay special attention to the notes/comments section of this spreadsheet as it will contain important information. Once the file is submitted to processing all pipeline updates in relation to processing and underwriting will come from the processor assigned to each loan. All of your transition loans will be processed by our corporate processing team until processors on your team are trained. By following the instructions below we can ensure a smooth transition and a pleasant borrower experience. If you have any questions about this email or the initial transition process please contact me and we will be glad to answer your questions.[6]

53.    This email then provides explicit detail on how T. Bailey and his branch are supposed to transition the loans that they obtained through AnnieMac and as AnnieMac employees to CrossCountry.[7]

54.    For example, this email states, "[t]he Transition Desk is used for new branches and or new branch MLO's that are onboarding with CCM. Once the branch and originators are onboarded and licensed all transition loans are then transferred back to the referring originator and a change of circumstance is completed."[8]

---

[6] Ex. F.
[7] Ex. F.
[8] Ex. F.

55.    CrossCountry not only unequivocally knew that T. Bailey and his team were unlawfully diverting loans from AnnieMac to CrossCountry, they had specifically designed protocols to do so and were encouraging and assisting the Individual Defendants at every step.

56.    For the next month, T. Bailey and the other employees at the Fair Lawn Branch followed CrossCountry's protocols and with CrossCountry's guidance, diverted the loans in AnnieMac's pipeline from the Fair Lawn Branch to CrossCountry.

57.    For example, T. Bailey and his branch transferred information for at least the following borrowers: Brocato, Carlisle, Lopez and Sanchez Rodriguez.

58.    There are numerous emails where one of the Fair Lawn Branch employees is transferring this information to CrossCountry from their AnnieMac email address.

59.    Jennifer Clark, Jon Wick, Sean Ortloff and William Myers are just some of the CrossCountry employees who directly assisted in the Baileys' unlawful loan diversion.

60.    On September 11, 2019, T. Bailey left the Fair Lawn New Jersey location and joined CrossCountry.

61.    Similarly, that same week every other employee at the Fair Lawn Branch left AnnieMac and is now employed by CrossCountry.

62.    As of September 13, 2019, no employees remained at AnnieMac's Fair Lawn Branch.

63.    To date, AnnieMac is aware of approximately 40 loans that the Individual Defendants diverted to CrossCountry worth approximately $11,876,855.

64.    The Individual Defendants each have arbitration agreements that provide in relevant part

65.    To the extent this Complaint is brought against the Individual Defendants it seeks only injunctive relief against them, pending resolution of any claims for damages asserted in arbitrations that AnnieMac has filed or intends to file against the Individual Defendants.

11

## COUNT ONE – BREACH OF CONTRACT
### (Injunctive Relief against Individual Defendants)

66.    AnnieMac repeats and realleges its allegations in Paragraphs 1 - 65 as if set forth in their entirety herein.

67.    In the Agreement, the Individual Defendants agreed to the restrictive covenants that prohibit them from usurping and disclosing AnnieMac's confidential information and from improperly disclosing and/or transferring non-public borrower information.

68.    Pursuant to these Agreements, T. Baily and Miller were contractually obligated not to disclose any of AnnieMac's Confidential Information.

69.    T. Bailey and Miller breached their confidentiality obligations to which they agreed, by, inter alia, disclosing and misappropriating AnnieMac's confidential information for their own benefit and the benefit of CrossCountry.

70.    The Individual Defendants were also contractually obligated not to "[s]olicit, attempt to hire or hire any personnel (employees, independent contractors or agents of [AnnieMac]" or any of AnnieMac's "customers or prospective customer … ."

71.    The Individual Defendants breached their non-solicitation obligations by directly inducing AnnieMac employees at the Fair Lawn branch and/or at the Hackensack Branch to leave their employment with AnnieMac and join CrossCountry.

72.    T. Bailey and Miller also breached their Agreement by soliciting current and prospective customers of AnnieMac.

73.    As a result of the Individual Dedfendants' violations of their contractual obligations, AnnieMac has suffered monetary losses and will continue to suffer these losses going forward due to lost business and good will.

74.    In addition, unless restrained preliminarily and permanently, the Individual Defendants' will continue to violate AnnieMac's rights, and will continue to ignore its contractual duties by using AnnieMac's confidential information to solicit/or divert consumers as well as disclosing the same to third parties to the detriment of AnnieMac, and will continue to cause the loss of the secrecy and the competitive value of AnnieMac's confidential information, thereby causing AnnieMac irreparable harm.

75.    As a result of the Individual Defendants' breaches, AnnieMac is entitled to injunctive relief.

## COUNT TWO – BREACH OF DUTY OF LOYALTY
(Injunctive Relief against T. Bailey and Miller)

76.    AnnieMac repeats and realleges its allegations in Paragraphs 1 - 75 as if set forth in their entirety herein.

77.    As employees of AnnieMac, T. Bailey and Miller owed a duty of loyalty to AnnieMac during the term of their employment, which prohibited the solicitation of AnnieMac's customers for their own benefit while still employed.

78.    T. Bailey and Miller further breached their duty of loyalty to AnnieMac by soliciting its employees to leave AnnieMac and work for CrossCountry, while they were still employed by AnnieMac, as well as diverting customers from AnnieMac and usurping business opportunities in direct competition with AnnieMac.

79.    These actions were orchestrated and undertaken by T. Bailey and Miller while employees of AnnieMac and owed duties of loyalty and fair dealing to it.

80.    As a result, AnnieMac has suffered and will continue to suffer irreparable injury and injunctive relief is necessary.

## COUNT THREE – BREACH OF FIDUCIARY DUTY
### (Injunctive Relief against T. Bailey and Miller)

81.     AnnieMac repeats and realleges its allegations in Paragraphs 1-80 as if set forth in their entirety herein.

82.     As employees and branch managers at AnnieMac, AnnieMac placed special trust and confidence in T. Bailey and Miller and relied heavily on them to act in its best interest.

83.     AnnieMac trusted T. Bailey and Miller to nurture and cultivate the AnnieMac branches they managed and use their discretion to direct the business there in the best interest of AnnieMac.

84.     Specifically, their duties were to ensure that all the loans handled by their respective branches were done so in accordance with AnnieMac's policies and applicable law, and hiring, developing, and maintaining a sales force of loan originators and support staff to maximize the branches profits and minimize risk.

85.     T. Bailey and Miller breached their fiduciary duty to AnnieMac when they solicited and raided AnnieMac's employees, diverted its loans and customers, and commandeered AnnieMac's business for their own, all while remaining employed by AnnieMac.

86.     All of the aforementioned actions were orchestrated and undertaken by T. Bailey and Miller while they were still employees of AnnieMac and owed it fiduciary duties.

87.     As a result of T. Bailey's and Miller's multiple willful breaches of their fiduciary duties, AnnieMac has suffered and will continue to suffer irreparable injury and is entitled to injunctive relief.

## COUNT FOUR – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (against CrossCountry, T. Bailey and Miller)

88.     AnnieMac repeats and realleges its allegations in Paragraphs 1- 87 as if set forth in their entirety herein.

89.     T. Bailey and Miller not only committed violations of their fiduciary duties but, acting at CrossCountry's instructions, assisted and encouraged their subordinate reports to divert and assist in diverting loans and confidential information to Defendant CrossCountry while they remained employed by AnnieMac.

90.     CrossCountry provided specific instructions on how to divert loans, provided and promised remuneration for diverting loans, and rewarded those who committed and ordered others to breach their fiduciary duties by providing management positions and higher compensation.

91.     CrossCountry purposefully had T. Bailey and Miller remain at AnnieMac rather than immediately commence employment with CrossCountry specifically for the purpose of diverting loans and soliciting other staff while they were employed by AnnieMac.

92.     Similarly, T. Bailey and Miller timed the departure of other branch employees based on their ability to prepare, facilitate and assist in the diversion of clients and loans.

93.     The actions of CrossCountry and T. Bailey and Miller facilitated, assisted and encouraged others to breach their fiduciary duties and rewarded such breaches of fiduciary duty.

94.     As a result of T. Bailey's, Miller's and CrossCountry's unlawful conduct AnnieMac has suffered and will continue to suffer irreparable injury and is entitled to injunctive relief.

## COUNT FIVE – VIOLATION OF THE LANHAM ACT, 15 U.S.C. 1125(a)
(against T.Bailey, Miller, and CrossCountry)

95.    AnnieMac repeats and realleges its allegations in Paragraphs 1 - 94 as if set forth in their entirety herein.

96.    T. Bailey and Miller made material misrepresentations to numerous consumers that the consumers were engaging in transactions with AnnieMac, and that AnnieMac would maintain their confidential information and originate, process and close their transactions.

97.    T. Bailey and Miller also misrepresented to consumers and potential consumers that they were engaging in an undertaking such transactions as representatives and agents of AnnieMac, whey they were actually working on behalf of CrossCountry.

98.    CrossCountry was not only aware of these misrepresentations but encouraged and perpetuated them.

99.    Numerous CrossCountry employees not only were on email threads to AnnieMac borrowers when the T. Bailey and Miller and their employees were asking for borrower information or communicating about the loan process, but were asking the AnnieMac borrowers for additional information so that CrossCountry, not AnnieMac, could close their loans.

100.    At no point did the T. Bailey and Miller or CrossCountry advise the borrowers that a new lender was processing and closing their mortgage.

101.    Indeed, communications with such consumers took place using and displaying Annie Mac's licensing information specifically designed to allow borrowers to look up its NMLS license number to ascertain the Company's regulatory and legal history.

102.    Unbeknownst to AnnieMac's customers, T. Bailey and Miller were originating, processing, underwriting, approving, pricing, and funding consumer loans with the intention of diverting them – and in fact, did so divert them – to CrossCountry, an AnnieMac competitor.

103.    This caused and continues to cause confusion among the consumers as to which company was providing them with a mortgage loan.  It created scenarios where borrowers – lured in under AnnieMac's reputation as reflected by its NMLS license number – were without their consent diverted to Cross Country.

104.    Moreover, information specifically entrusted to Annie Mac by consumers was surreptitiously provided to Cross Country, without Borrowers' consent to enable Cross Country to begin processing and underwriting these loans.

105.    T. Bailey and Miller have been unjustly enriched as a direct and proximate result of their wrongful acts, and AnnieMac has suffered damage s in an amount not yet fully determined.

106.    As a direct result of T. Bailey's and Miller's actions, AnnieMac has been harmed and continues to be irreparably harmed by the loss of business and goodwill in the marketplace and consumers harmed through the T. Bailey's and Miller's material misrepresentations.

107.    The foregoing acts constitute unfair competition in violation of Section 43(a) of the Lanham Act.

108.    T. Bailey, Miller, and CrossCountry have acted knowingly, willfully, and in conscious disregard of the rights of their consumers, AnnieMac, and the general public.

## COUNT SIX – TORTIOUS INTERFERENCE WITH CURRENT CONTRACTUAL AND PROSPECTIVE ECONOMIC RELATIONS
(against All Defendants)

109.    AnnieMac repeats and realleges its allegations in Paragraphs 1 – 108 as if set forth in their entirety herein.

110.    AnnieMac had contractual relationships with borrowers for whom it was originating mortgage loans and AnnieMac derived profit from these relationships.

111.    By virtue of their positions of trust and duties with AnnieMac, the Individual Defendants were aware of these relationships.

112.    Further, because of these relationships, the Individual Defendants were able to divert these customers and their loans to CrossCountry, for the benefit and profit of CrossCountry.

113.    AnnieMac had a reasonable expectation of future business relationships with potential consumers who indicated an interest in engaging AnnieMac's services by filling out a loan application or otherwise proceeding with the process for obtaining a mortgage.

114.    There was a reasonable probability that AnnieMac and these potential consumers would have entered into one or more contractual relationships because they provided their contact information or submitted applications to AnnieMac with the goal of obtaining a loan.

115.    Defendant CrossCountry knowingly and purposefully facilitated the Individual Defendants in diverting their pipeline of loans from AnnieMac to CrossCountry.

116.    CrossCountry engaged in these activities, fully aware of the actual and prospective business relationships using malicious and unlawful conduct to facilitate the diversion and interference of AnnieMac's actual and prospective business relationships as alleged herein.

117.    AnnieMac has suffered harm through the loss of business and goodwill in the marketplace and consumers harmed through the Defendant's misconduct.

## COUNT SEVEN – UNFAIR COMPETITION
### (against T. Bailey, Miller, and CrossCountry)

118.    AnnieMac repeats and realleges its allegations in Paragraphs 1 – 117 as if set forth in their entirety herein.

119.    CrossCountry, and T. Bailey and Miller, while still employees of AnnieMac, raided AnnieMac's employees in two of their branches, diverted its customers and usurped AnnieMac's confidential information, including borrower lists and personal borrower information.

120.    CrossCountry and T. Bailey and Miller, did this maliciously, surreptitiously and with the intent to effectuate their scheme without AnnieMac's knowledge.

121.    CrossCountry and T. Bailey and Miller engaged in this misconduct for the purpose of directly and unfairly competing with AnnieMac and stealing its customers and business opportunities.

122.    As a direct result of T. Bailey's, Miller's, and CrossCountry's actions, AnnieMac has been harmed and continues to be irrepealably harmed in the loss of business and goodwill in the marketplace.

## COUNT EIGHT – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF NEW JERSEY UNIFORM TRADE SECRETS ACT
(against T. Bailey, Miller, and CrossCountry)

123.    AnnieMac repeats and realleges its allegations in Paragraphs 1 – 122 as if set forth in their entirety herein.

124.    AnnieMac devises independent economic value from its list of potential and actual customers and non-public borrower information, information which is not generally known, and AnnieMac took reasonable measures to maintain and protect the secret nature of the information. As such, the lists constitute trade secrets under New Jersey's Uniform Trade Secrets Act.

125.    T. Bailey and Miller were entrusted with this confidential and proprietary information in the performance of their job.

126.    T. Bailey and Miller improperly and unlawfully accessed and disclosed these trade secrets to CrossCountry and CrossCountry utilized such trade secrets in breach of applicable law and duties, all to AnnieMac's detriment.

127.    T. Bailey, Miller, and CrossCountry actions directly caused AnnieMac harm through the loss of current and future business and good will.

19

128.    Unless T. Bailey, Miller, and CrossCountry are restrained by appropriate injunctive relief, and/or unless AnnieMac is made whole through damages attributable to business and good will lost, T. Bailey's, Miller's, and CrossCountry's conduct has and will continue to cause AnnieMac harm.

## COUNT NINE – VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C.§ 1836 et seq.
(against T. Bailey, Miller, and CrossCountry)

129.    AnnieMac repeats and realleges its allegations in Paragraphs 1 - 128 as if set forth in their entirety herein

130.    The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3), defines a trade secret as, inter alia, "all forms and types of financial, business, scientific, technical, economic, or engineering information … whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" – provided that the owner took "reasonable measures to keep such information secret," and it offers the holder of the trade secret and advantage over competitors who do not know or use the trade secret.

131.    AnnieMac's list of potential and actual customers and non-public borrower information were kept secret by substantial measures undertaken by AnnieMac to protect the secret and private nature of the information.

132.    AnnieMac's trade secrets are related to products and/or services used in interstate commerce.

133.    T. Bailey and Miller were entrusted with this confidential and proprietary information in the performance of their job.

134.    T. Bailey and Miller improperly and unlawfully accessed and disclosed these trade secrets to CrossCountry, which knew or had reason to know that these trade secrets were acquired by improper means.

135.    T. Bailey, Miller, and CrossCountry utilized such trade secrets in breach of applicable law and duties, without AnnieMac's express or implied consent, all to AnnieMac's detriment.

136.    T. Bailey's, Miller's, and CrossCountry's actions directly caused AnnieMac harm through the loss of current and future business and good will.

137.    Unless T. Bailey, Miller, and CrossCountry are restrained by appropriate injunctive relief, and/or unless AnnieMac is made whole through damages attributable to business and good will lost, T. Bailey's, Miller's, and CrossCountry's conduct has and will continue to cause AnnieMac harm.

**COUNT TEN – CONSPIRACY**
(against T. Bailey, Miller, and CrossCountry )

138.    AnnieMac repeats and realleges its allegations in Paragraphs 1 – 137 as if set forth in their entirety herein.

139.    T. Bailey, Miller, and CrossCountry together engaged in the overt acts of diverting loans to CrossCountry while acting as AnnieMac and using AnnieMac's employees and facilities.

140.    These overt actions caused AnnieMac damages through the loss of earnings, business and customers, and goodwill in the marketplace.

## **PRAYER FOR RELIEF**

WHEREFORE, in that Plaintiff has filed or intends to file claims for damages pursuant to the arbitration agreements in place with the Individual Defendants, this case seeks only injunctive relief against the Individual Defendants pending resolution of any arbitration seeking damages for the actions alleged herein, as provided for and permitted by the arbitration agreements. Thus, as to all counts and Defendants, Plaintiff respectfully requests that the Court enter judgment in its favor and award the following relief against Defendants:

a.    Permanently restraining the Individual Defendants from violating the restrictive covenants in their Employment Agreements, including by soliciting AnnieMac's employees and customers, for a period of at least 12 months, and from further disclosing AnnieMac's Confidential Information;

b.    Compelling the Individual Defendants and CrossCountry to provide an accounting of all loans that the Individual Defendants have closed, or have attempted to close by sending borrower information to CrossCountry from May 2019 to the present;

d.    Disgorgement of the profits CrossCountry realized as a result of closing the loans that were improperly diverted from AnnieMac;

e.    From CrossCountry, actual and compensatory damages, attorneys' fees and expenses and costs of pursuing this matter;

f.    From CrossCountry, double or treble actual damages and punitive damages as appropriate;

g.    Interest; and

h.    Such other relief as the Court deems just and proper.

OFFIT KURMAN, P.A.

Katharine Thomas Batista
Sarah Kleinman
Ten Penn Center
1801 Market Street, Suite 2300
Philadelphia, PA  19103
267-338-1319
267-338-1335 (facsimile)
kbatista@offitkurman.com
skleinman@offitkurman.com

Dated:  January 27, 2020
4845-4035-4995, v. 1

23