**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY, LLC, | Civil Action No. 20-00874 (SDW)(LDW) |
| Plaintiff, | **OPINION** |
| v. | May 4, 2022 |
| CROSSCOUNTRY MORTGAGE, INC., | |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Defendant CrossCountry Mortgage, Inc.'s ("Defendant" or "CrossCountry") Motion to Dismiss (D.E. 57-1) Plaintiff American Neighborhood Mortgage Acceptance Company, LLC's ("Plaintiff" or "AnnieMac") Amended Complaint (D.E. 25-1 ("Am. Compl.")) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  This Court having considered the parties' submissions, having reached its decision without oral argument pursuant to Rule 78, and for the reasons stated herein, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

I.    **FACTUAL HISTORY**

AnnieMac and CrossCountry are both licensed mortgage lenders in the State of New Jersey, with multiple office locations throughout New Jersey.  (Am. Compl. ¶¶ 1, 2, 6.)  In April 2015, AnnieMac hired Todd Bailey and Jeffrey Bailey as co-branch managers in its Fair Lawn, New Jersey office.  (*Id.* ¶ 9.)  Then, in December 2017, AnnieMac hired Shawn Miller and Steven

1

Lo Bue as co-branch managers in its Hackensack, New Jersey office.  (*Id.* ¶ 10.)  In connection with their individual employments, AnnieMac required Todd Bailey ("T. Bailey"), Shawn Miller ("Miller"), and Steven Lo Bue ("Lo Bue") (collectively, the "Former Employees") to execute Branch Manager Employment Agreements, which set forth the terms of their employment and their post-termination obligations and restrictions.  (*Id.* ¶ 12-13 & Ex. A, B, C.)  AnnieMac contends that, as branch managers, the Former Employees were responsible for the day-to-day operations of their respective branches, enforcing AnnieMac's policies, and protecting AnnieMac's confidential information, trade secrets, and borrower information.  (*Id.* ¶¶ 15-24.)  The Former Employees were entrusted with AnnieMac's leads, customer loan applications, and pricing information to originate loans funded by and through AnnieMac.  (*Id.* ¶ 22.)

Plaintiff alleges that on June 4, 2019, Miller received a written offer of employment from CrossCountry. (*Id.* ¶ 29.)  Plaintiff asserts that while still employed with AnnieMac and with CrossCountry's knowledge, Miller "sent AnnieMac borrower information and CrossCountry loan applications for borrowers initiated in AnnieMac's system to his personal email address."  (*Id.* ¶ 30.)  Specifically, Miller forwarded bank information and state required notices connected to various borrower loans from AnnieMac to his personal email address. (*Id.* ¶¶ 30-38.)

Plaintiff alleges that on July 25, 2019, T. Bailey received a written offer of employment from CrossCountry and thereafter, began diverting loans from AnnieMac to CrossCountry.  (*Id.* ¶¶ 49, 51-61.)  T. Bailey and other AnnieMac employees transferred borrower information to CrossCountry from their AnnieMac email address.  (*Id.* ¶¶ 58-60.)  Plaintiff asserts that in an August 8, 2019 email from CrossCountry to T. Bailey, CrossCountry provided T. Bailey instructions for "transitioning [his] loans and building [his] pipeline." (*Id.* ¶¶ 50-54 & Ex. F.) AnnieMac contends that CrossCountry "unequivocally knew that T. Bailey and his team were

unlawfully diverting loans from AnnieMac to CrossCountry" because "[n]umerous CrossCountry employees were on email threads to AnnieMac borrowers" and "CrossCountry employees were asking the AnnieMac borrowers for additional information so that CrossCountry, not AnnieMac, could close their loans." *(Id.* ¶ 57, 86-87.)

In August and September 2019, Lo Bue, Miller, T. Bailey, and other AnnieMac employees left AnnieMac to join CrossCountry. (*Id.* ¶ 40-42, 44, 62-64.) AnnieMac alleges that after Miller resigned, a loan processor at AnnieMac continued to assist Miller with diverting borrower files from AnnieMac to CrossCountry. (*Id.* ¶ 32.) As of August 9, 2019 and September 13, 2019, no employees remained at AnnieMac's Hackensack and Fair Lawn offices. (*Id.* ¶ 43, 64.)

AnnieMac alleges that CrossCountry used certain systems specifically designed to divert loans from competitors to CrossCountry. (*Id.* ¶¶ 31, 51, 54-55, 66.) For example, AnnieMac asserts that CrossCountry had a formal process that included a "Transition Desk", a separate department within CrossCountry specifically designed to process diverted loans for new branches and/or new employees that are onboarding with CrossCountry. (*Id.* ¶¶ 31, 51, 52, 54-55, 65-67.) Specifically, CrossCountry purportedly assigns a transition loan officer to process the diverted loans prior to the employees onboarding at CrossCountry and then pays the new employees for any diverted loans closed by the transition loan officer. (*Id.* ¶¶ 54-55.)

AnnieMac further contends that CrossCountry unlawfully diverted loans from competitors like LoanDepot and Freedom Mortgage to CrossCountry through employees CrossCountry actively solicited. (*Id.* ¶¶ 66-68.) CrossCountry purportedly engaged in the same unlawful pattern of activity when it recruited AnnieMac's employees and provided them with a transition team to divert loans from AnnieMac for CrossCountry's benefit. *(Id.* ¶ 71.) It is alleged that at least thirty (30) loans worth nine million dollars were diverted. *(Id.* ¶ 72.)

## II. <u>PROCEDURAL HISTORY</u>

On January 27, 2020, AnnieMac filed its original complaint against CrossCountry, T. Bailey, Miller, and Lo Bue (T. Bailey, Miller, and Lo Bue are collectively referred to as the "Individual Defendants"). (D.E. 1.) On June 18, 2020, the Individual Defendants moved to compel arbitration and stay this action under 9 U.S.C. § 3 (D.E. 16.) and CrossCountry moved to dismiss AnnieMac's original complaint. (D.E. 20.) On July 20, 2020, AnnieMac filed a six-count Amended Complaint alleging: aiding and abetting breach of fiduciary duty (Count One); violation of the Lanham Act, 15 U.S.C § 1125(a) (Count Two); tortious interference with current contractual and prospective economic relations (Count Three); unfair competition (Count Four); misappropriation of Trade Secrets in violation of New Jersey Uniform Trade Secrets Act ("NJTSA") (Count Five); and violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA") (Count Six). The Amended Complaint removed the Individual Defendants as parties to the action. (D.E. 25.) Subsequently, the Individual Defendants and CrossCountry moved to strike the Amended Complaint. (D.E. 27.) By way of Order dated October 23, 2020, this Court denied the Motion to Strike and dismissed as moot the Motion to Compel Arbitration/Stay and the Motion to Dismiss. (D.E. 41.) Said Order was affirmed by the Third Circuit Court of Appeals on October 8, 2021. (D.E. 53.) CrossCountry now moves to dismiss the Amended Complaint. (D.E. 57-1.)

## III. <u>LEGAL STANDARD</u>

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (discussing the *Iqbal* standard). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Iqbal*, 556 U.S. at 679.

IV. **DISCUSSION**

A. **Aiding and Abetting Breach of Fiduciary Duty (Count One)**

AnnieMac alleges that CrossCountry aided and abetted AnnieMac's Former Employees in breaching their fiduciary duties to AnnieMac. (Am. Compl. ¶¶ 75-81.) To be found liable for aiding and abetting a breach of fiduciary duty, a plaintiff must allege: "(1) a breach of fiduciary duty; (2) the defendant's knowledge of and substantial assistance in that breach; and (3) damages resulting from the breach." *See Wiatt v. Winston & Strawn LLP*, 838 F.Supp.2d 296, 307 (D.N.J. Jan. 17, 2012) (citing *McCormac v. Quest Communications International, Inc.*, 387 N.J.Super. 469, 481-83, 904 A.2d 775 (N.J. App. Div. 2006); *Judson v. Peoples Bank & Trust Co.*, 25 N.J.

5

17, 28-30, 134 A.2d 761 (1957) (Recognition of claims for aiding and abetting liability is found in cases where one party "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.") Under New Jersey law, "[t]he elements of aiding and abetting are: (1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing." *Willekes v. Serengeti Trading Company*, 783 F. App'x 179, 185 (3d Cir. 2019).

Here, AnnieMac has properly pled its claim for aiding and abetting breach of fiduciary duties. The Amended Complaint sufficiently alleges that AnnieMac's Former Employees had contractual obligations as branch managers to comply with their fiduciary obligations to AnnieMac while employed with AnnieMac. (*Id.* ¶ 18.) AnnieMac clearly asserts that its Former Employees in conjunction with CrossCountry acted improperly in diverting AnnieMac loans and borrower information away from AnnieMac for the purpose of closing said loans with CrossCountry. (*Id.* ¶¶ 30-34, 58-61, 73, 75.) Specifically, CrossCountry assisted AnnieMac's Former Employees in diverting loans, *inter alia*, by (1) using a transition desk designed to divert loans away from competitors; (2) having CrossCountry employees contact borrowers to facilitate the transfer of loans; and (3) having AnnieMac's Former Employees send borrower information and CrossCountry loan applications for borrowers to their personal email addresses. (*Id.* ¶¶ 30, 51-55, 66-67.) AnnieMac alleges that CrossCountry's aiding the Former Employees in breaching their fiduciary duties resulted in approximately thirty loans worth nine million dollars being diverted to CrossCountry. (*Id.* ¶ 73.)

Significantly, CrossCountry's argument that the Former Employees did not breach their fiduciary duties because their agreements permitted them to divert these loans requires this Court

6

to assess information which is clearly inappropriate on a motion to dismiss. (D.E. 57-1 at 11-12.) As pled, the claim for aiding and abetting breach of fiduciary duties (Count One) shall remain.

### B. Violation of Section 1125(a) of the Lanham Act (Count Two)

AnnieMac alleges that CrossCountry violated Section 1125(a) of the Lanham Act because CrossCountry communicated with AnnieMac's borrowers in a manner that gave the appearance that the borrowers were still transacting with AnnieMac. (D.E. 58 at 8-10.)

To state a claim under the Lanham Act, the plaintiff must allege "(1) that the defendant uses a false designation of origin; (2) that such use of a false designation of origin occurs in interstate commerce in connection with goods or services; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of the plaintiff's goods and services by another person; and (4) that the plaintiff has been or is likely to be damaged." *Parker v. Google, Inc.*, 242 F. App'x 833, 838 (3d Cir. 2007) (citing *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir. 1994).

AnnieMac has sufficiently pled a claim for violation of the Lanham Act,[1] alleging that CrossCountry assisted in diverting loans from AnnieMac to CrossCountry by communicating with borrowers for additional information needed to close their loans at CrossCountry. (Am. Compl. ¶¶ 86-87). CrossCountry used emails that included AnnieMac's licensing designations so that borrowers would not be alerted that there had been a change in lender, but would assume they were still closing their loans through AnnieMac. (*Id.* ¶¶ 88-91, 125.) AnnieMac contends that

---

[1] At this stage, AnnieMac has sufficiently pled elements (2) "use of a false designation of origin occurs in interstate commerce in connection with goods or services" and (4) that "plaintiff has been or is likely to be damaged" of the Lanham Act. *Parker v. Google, Inc.*, 242 F. App'x at 838. AnnieMac has alleged that AnnieMac's loan products and services are used in interstate commerce because loans are commonly sold on the secondary market to entities outside of New Jersey. (Am. Compl. ¶ 125 & D.E. 58 at 9.) Thus, "AnnieMac is not the end consumer in a mortgage loan transaction." (D.E. 58 at 9.) AnnieMac has also asserted that CrossCountry's misrepresentations caused it to suffer loss of business and goodwill in the marketplace. (Am. Compl. ¶¶ 96-97.)

CrossCountry's misrepresentations caused confusion among borrowers who did not consent to the transfer of their loans or understand that their loans had been moved to another mortgage lender. (*Id.* ¶¶ 92-95.)

To the extent that CrossCountry argues that AnnieMac must submit evidence of customer confusion to support its claim for violation of the Lanham Act, such argument is premature. (D.E. 57-1 at 18-19.) It is well established that AnnieMac need only allege that customers were likely to be confused, not that they were actually confused at this stage of the action. *See AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d at 1443-1444. Plaintiff's claim for violation of the Lanham Act (Count Two) shall remain.

C. **Tortious Interference with Contractual and Prospective Economic Relations (Count Three)**

AnnieMac's tortious interference claims are based on allegations that CrossCountry was aware of the contractual relationships that AnnieMac had with its borrowers and knowingly facilitated the Former Employees in diverting their pipeline of loans from AnnieMac to CrossCountry. (Am. Compl. ¶¶ 31-38, 51-58, 101-102, 106-107.) Plaintiff further alleges that CrossCountry engaged in a pattern of utilizing its "Transition Desk" to knowingly and purposefully transition loans obtained through AnnieMac to CrossCountry. (*Id.* ¶¶ 31-38, 51-58.)

Under New Jersey law, the elements of tortious interference with a contractual relationship claim and tortious interference with prospective economic relations claim are nearly identical. To state a claim for tortious interference with a contractual relationship, the plaintiff must allege 1) a protectable right, i.e., a contract; 2) intentional and malicious interference with the protectable right 3) that causes a loss with resulting damages. *DBA Distribution Services, Inc. v. All Source Freight Solutions, Inc.*, 2012 WL 845929, at *6 (D.N.J. Mar. 13, 2012) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.,* 116 N.J. 739, 751-752, 563 A.2d 31 (1989)). Similarly, to state

a claim for tortious interference with a prospective economic benefit or economic relations, AnnieMac must allege (1) a protectable right—a prospective economic or contractual relationship or reasonable expectation thereof; (2) interference done intentionally and with malice; (3) interference caused the loss of the prospective gain; and (4) resulting damages. *Printing Mart–Morristown,* 116 N.J. at 751-752.  The only distinction between the claims is that a tortious interference with a contractual relationship claim must allege a contract, while a tortious interference with a prospective economic benefit or economic relations must allege a prospective economic advantage as the protectable right. *See Macdougall v. Weichert,* 144 N.J. 380, 403-04, 677 A.2d 162 (1996) (citing *Printing Mart-Morristown*, 116 N.J. at 751-52).

AnnieMac's Amended Complaint sufficiently states a claim for tortious interference as to AnnieMac's relationship with its borrowers and potential borrowers.  AnnieMac alleges that it had an existing economic relationship with its borrowers; CrossCountry knew of AnnieMac's relationships with its borrowers; CrossCountry purposefully diverted loans obtained through AnnieMac to CrossCountry using employees still employed by AnnieMac; and damages resulted from CrossCountry's misconduct.  (Am. Compl. ¶¶ 31, 51-58, 101-102, 05-107.)  Further, AnnieMac contends that it had a reasonable expectation of future business with its potential borrowers evidenced by the fact that these individuals all filled out loan applications and provided their information to obtain a loan from AnnieMac. (*Id.* ¶¶ 104-105.)  Indeed, AnnieMac has sufficiently identified contracts or relationships affected by CrossCountry's alleged misconduct and alleged that CrossCountry intentionally interfered without justification. (*See generally* Am. Compl.)  Again, CrossCountry's argument that AnnieMac has failed to plead that "the loan pipelines that purportedly were 'diverted' to CrossCountry fell outside the category of borrowers who Messrs. [T. Bailey] and Miller were contractually permitted to 'contact or solicit' under their

employment agreements with AnnieMac", requires a factual analysis which is not proper at this juncture. (D.E. 57-1 at 20-21.) Regarding Plaintiff's claim for tortious interference (Count Three), the motion is denied.

### D. Unfair Competition (Count Four)

CrossCountry argues that AnnieMac's claim for unfair competition should be dismissed as duplicative because it merely restates the same allegations as AnnieMac's other claims and asserts no argument for the viability of an unfair competition claim distinct from its other claims. (D.E. 57-1 at 22-23.)

"The common law tort of unfair competition has historically been viewed as an umbrella for tortious interference claims." *Heartland Payment Systems, LLC v. Carr*, 2021 WL 302918, at *8 (D.N.J. Jan. 29, 2021) (quoting *National Auto Division, LLC v. Collector's Alliance, Inc.*, 2017 WL 410241, at *4 (N.J. App. Div. Jan. 31, 2017) (citing Restatement (Third) of Unfair Competition § 1 cmt. g (1995))). Under New Jersey law, "[t]here is no distinct cause of action for unfair competition. It is a general rubric which subsumes various other causes of action." *Diversified Indus., Inc. v. Vinyl Trends, Inc.,* Civ. No. 13–6194, 2014 WL 1767471, at *6 (D.N.J. May 1, 2014) (quoting *C.R. Bard, Inc. v. Wordtronics Corp.*, 561 A.2d 694, 696 (N.J. Super. Ct. Law. Div. 1989)). Courts in this District have held that because unfair competition is a rubric which subsumes claims for tortious interference with business or contractual relations, and not a recognized cause of action in and of itself, a claim for unfair competition will be dismissed where it is duplicative of a tortious interference claim. *Diversified Indus., Inc. v. Vinyl Trends, Inc.,* 2014 WL 1767471, at *6-7.

CrossCountry has correctly noted that AnnieMac's unfair competition claim is duplicative of its other claims. (D.E. 57-1 at 22-23.) The factual basis for AnnieMac's unfair competition

claim, similar to its other claims, is that CrossCountry competed unfairly by "utili[zing] a formalized system for stealing competitor loans and borrowers, raid[ing] AnnieMac's employees in two of their branches, divert[ing] its customers and usurp[ing] AnnieMac's confidential information." (Am. Compl. 110.) Specifically, in Count One, AnnieMac alleges that CrossCountry provided instructions on how to divert loans and assisted AnnieMac's Former Employees with diverting loans while employed by AnnieMac. (Am. Compl. 75-79.) Then, in Count Three, AnnieMac alleges that CrossCountry tortiously interfered with AnnieMac's contractual and prospective economic relations by purposefully facilitating the Former Employees in diverting their pipeline of loans from AnnieMac to CrossCountry. (*Id.* ¶¶ 101-108.) The offending conduct pled in Counts One and Three is exactly the same conduct giving rise to AnnieMac's unfair competition claim. (*Id.* ¶¶ 75-79, 101-108.) Significantly, AnnieMac does not argue to the contrary and merely asserts that its "unfair competition claim should not be dismissed simply because it is based on similar allegations to some of Plaintiff's other claims against Defendant." (D.E. 58 at 13.) AnnieMac sets forth no argument or facts to support an independent unfair competition claim. (*Id.* ¶¶ 12-13.) Accordingly, AnnieMac's unfair competition claim (Count Four) is dismissed as duplicative.

### E. Misappropriation of Trade Secrets under the NJTSA and Violation of Trade Secrets under the DTSA (Counts Five and Six)

In Counts Five and Six of the Amended Complaint, AnnieMac alleges trade secret claims under the NJTSA and the DTSA pleading that CrossCountry misappropriated trade secrets comprising of AnnieMac's list of potential and actual customers and non-public borrower information pertaining to borrower loans. (Am. Compl. ¶¶ 117, 124.) AnnieMac contends that with CrossCountry's knowledge and direction the Former Employees improperly and unlawfully

disclosed trade secrets to CrossCountry, which CrossCountry used to its benefit. (Am. Compl. ¶ 119, 127.)

Violations of the NJTSA and DTSA both require claimants to demonstrate: "(1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." *Par Pharmaceutical, Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019). Thus, "[f]or courts in this District, the analysis under the DTSA folds into that of the NJTSA. The essential inquiry for a trade secret is whether the information derives economic value, the information is not readily ascertainable by other means, and the holder endeavors for it to remain confidential." *Scherer Design Grp., LLC v. Schwartz*, Civ. No. 18-3540, 2018 WL 3613421, at *4 (D.N.J. July 26, 2018), a*ff'd sub nom. Scherer Design Grp., LLC v. Ahead Eng'g LLC*, 764 F. App'x 147 (3d Cir. 2019) (citing *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 423 (D.N.J. 2016) (quoting N.J. Stat. Ann. 56:15-2)). A plaintiff must have taken "precautions to maintain the secrecy of the trade secret." *Mu Sigma, Inc. v. Affine, Inc.*, 2013 WL 3772724, at * 8 (D.N.J. July 17, 2013).

CrossCountry argues that AnnieMac has not complied with Rule 12(b)(6)'s pleading standards, *inter alia*, because: (1) the Amended Complaint does not plead the existence of a protectable trade secret, but makes only conclusory and vague statements (D.E. 57-1 at 24); (2) the Amended Complaint does not allege any act of misappropriation (D.E. 57-1 at 25); and (3) the Amended Complaint does not allege any specific steps taken to protect AnnieMac's alleged trade secret information. (D.E. 57-1 at 26.) Indeed, AnnieMac's trade secret claims are pled far too generally. (Am. Compl. ¶¶ 117-130.) Absent from the Amended Complaint is any specificity as

to what trade secrets existed or what information was misappropriated beyond the allegation that customers were stolen and trade secrets were disclosed. (Am. Compl. ¶¶ 117, 124, 126-127.) The remaining allegations in support of AnnieMac's trade secrets claims consist of bare recitations of the elements required under the NJTSA and the DTSA. (*See generally* Am. Compl. ¶¶ 117-130.) AnnieMac provides no basis on which to find its allegations sufficient to state claims under the NJTSA or the DTSA. (*See id.*) Counts Five and Six are therefore dismissed without prejudice.

## V.   CONCLUSION

For the reasons set forth above, CrossCountry's motion is **GRANTED IN PART** and **DENIED IN PART**. Counts One, Two and Three alleging aiding and abetting breach of fiduciary duty, violation of the Lanham Act, 15 U.S.C § 1125(a), and tortious interference with current contractual and prospective economic relations shall proceed, while Counts Four, Five and Six unfair competition, misappropriation of trade secrets under the NJTSA, and violation of the DTSA are dismissed without prejudice. Any further amendments as to the dismissed counts shall be filed within thirty (30) days of the date of this Opinion. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        Leda D. Wettre, U.S.M.J.