**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY, LLC,<br><br>                 Plaintiff,<br><br>v.<br><br>CROSSCOUNTRY MORTGAGE, INC.,<br><br>                 Defendant. | Civil Action No. 20-00874 (SDW)(LDW)<br><br>**OPINION**<br><br>December 12, 2022 |

**WIGENTON**, District Judge.

Before this Court is Defendant CrossCountry Mortgage, Inc.'s ("Defendant" or "CrossCountry") Motion to Dismiss Count Four (D.E. 104) of Plaintiff American Neighborhood Mortgage Acceptance Company, LLC's ("Plaintiff" or "AnnieMac") Second Amended Complaint (D.E. 98 ("SAC")) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  This Court having considered the parties' submissions, having reached its decision without oral argument pursuant to Rule 78, and for the reasons stated herein, Defendant's motion is **DENIED**.

I. **FACTUAL HISTORY**

AnnieMac and CrossCountry are both licensed mortgage lenders in the State of New Jersey, with multiple office locations throughout New Jersey.  (SAC ¶¶ 1, 2, 5.)  In April 2015, AnnieMac hired Todd Bailey and Jeffrey Bailey as co-branch managers in its Fair Lawn, New Jersey office.  (*Id.* ¶ 8.)  Then, in December 2017, AnnieMac hired Shawn Miller and Steven Lo

Bue as co-branch managers in its Hackensack, New Jersey office. (*Id.* ¶ 9.) In connection with their individual employments, AnnieMac required Todd Bailey ("T. Bailey"), Shawn Miller ("Miller"), and Steven Lo Bue ("Lo Bue") (collectively, the "Former Employees") to execute Branch Manager Employment Agreements, which set forth the terms of their employment and their post-termination obligations and restrictions. (*Id.* ¶¶ 11–12 & Ex. A, B, C.) AnnieMac contends that, as branch managers, the Former Employees were responsible for the day-to-day operations of their respective branches, enforcing AnnieMac's policies, and protecting AnnieMac's confidential information, trade secrets, and borrower information. (*Id.* ¶¶ 14–24.) The Former Employees were entrusted with AnnieMac's leads, customer loan applications, and pricing information to originate loans funded by and through AnnieMac. (*Id.* ¶¶ 21–22.) The Former Employees were "broadly prohibit[ed] [] from disclosing or using any confidential materials[1] or directly or indirectly interfering with AnnieMac's business," as well as required to protect "non-public personal information of consumers who inquire into, apply for, and/or receive a mortgage loan or other service from [AnnieMac][.]" (*Id.* ¶¶ 27, 31) (internal quotations omitted.)

On June 4, 2019, Miller received a written offer of employment from CrossCountry. (*Id.* ¶ 34.) While still employed with AnnieMac, Miller allegedly "sent AnnieMac borrower information and CrossCountry loan applications for borrowers initiated in AnnieMac's system to his personal email address." (*Id.* ¶ 35.) Specifically, Miller forwarded bank information and state required notices connected to various borrower loans from AnnieMac to his personal email address. (*Id.* ¶¶ 35, 37–44.)

---

[1] The Second Amended Complaint sets forth that "[t]he Agreements define "Confidential Materials" as including all "forms, procedures, files, records, documents, correspondence, notes, business card files, memoranda, pricing and marketing information . . . vendor and affiliate information, financial information concerning [AnnieMac] and its affiliates, computer records, reports, customer (including current, former and prospective customer) lists, printouts, manuals, computer equipment and software . . . and other documents (and all copies thereof) and similar items relating to the business of [AnnieMac] which are owned by [AnnieMac] and which are regularly used in the operation of the business of [AnnieMac]." (SAC ¶ 28.)

On July 25, 2019, T. Bailey received a written offer of employment from CrossCountry and thereafter, began diverting loans from AnnieMac to CrossCountry. (*Id.* ¶¶ 54–71.) T. Bailey and other AnnieMac employees transferred borrower information to CrossCountry from their AnnieMac email address. (*Id.* ¶¶ 67–70.) In an August 8, 2019 email, from CrossCountry to T. Bailey, CrossCountry provided T. Bailey with instructions for "transitioning [his] loans and building [his] pipeline." (*Id.* ¶¶ 55–59.) The email directed T. Bailey to send non-public borrower information, including the borrower's name, address, social security number, and email address to CrossCountry while still employed at AnnieMac. (*Id.* ¶¶ 61–62.) CrossCountry purportedly encouraged AnnieMac employees to send financial information and pricing information belonging to AnnieMac, including upfront fees, discount fees, prequalification and pre-approval information, and loan types to CrossCountry. (*Id.* ¶ 64.) AnnieMac asserts that CrossCountry "unequivocally knew that T. Bailey and his team were unlawfully diverting loans from AnnieMac to CrossCountry" because "[n]umerous CrossCountry employees were on email threads to AnnieMac borrowers" and "CrossCountry employees were asking the AnnieMac borrowers for additional information so that CrossCountry, not AnnieMac, could close their loans." (*Id.* ¶¶ 66, 95–96.)

In August and September 2019, Lo Bue, Miller, T. Bailey, and other AnnieMac employees left AnnieMac to join CrossCountry. (*Id.* ¶¶ 45–51, 71–73.) After Miller resigned, a loan processor at AnnieMac continued to assist Miller with diverting borrower files from AnnieMac to CrossCountry. (*Id.* ¶ 37.) As of August 9, 2019 and September 13, 2019, no employees remained at AnnieMac's Hackensack and Fair Lawn offices. (*Id.* ¶¶ 49–50, 73.)

AnnieMac contends that CrossCountry used certain formalized systems specifically designed to divert loans and borrowers from competitors to CrossCountry. (*Id.* ¶¶ 41, 55–57, 59–64.) For example, CrossCountry used a formal process that included a "Transition Desk", a

3

separate department within CrossCountry specifically designed to process diverted loans for new branches and/or new employees onboarding with CrossCountry.[2]  (*Id.* ¶¶ 41, 55–57, 59–64.) CrossCountry purportedly assigned a transition loan officer to process the diverted loans prior to the employees onboarding at CrossCountry and then paid the new employees for any diverted loans closed by the transition loan officer.  (*Id.* ¶ 60.)  Through its formalized systems and loan-transition policies, "CrossCountry urged AnnieMac employees – including the [Former Employees], Anuradha Jagadeesan, Karen Nobile, and other employees in AnnieMac's Hackensack and Fair Lawn Branches – to send confidential borrower lists and non-public borrower information to CrossCountry."  (*Id.* ¶ 119.)  AnnieMac asserts that CrossCountry employees communicated with AnnieMac borrowers using AnnieMac's "NMLS licensing information" and purposefully failed to advise the borrowers that a new lender was processing and closing their mortgages.  (*Id.* ¶¶ 121–124.)

AnnieMac further contends that CrossCountry had an ongoing pattern of unlawful activity, wherein CrossCountry diverted loans from competitors like LoanDepot and Freedom Mortgage Loans to CrossCountry through employees CrossCountry actively solicited. (*Id.* ¶¶ 74–77.)  It is alleged that the Former Employees and other AnnieMac employees diverted at least thirty (30) loans worth nine million dollars.  *(Id.* ¶ 82.)

## II.    PROCEDURAL HISTORY

On January 27, 2020, AnnieMac filed its original complaint against CrossCountry and the Former Employees.  (D.E. 1.)  On June 18, 2020, the Former Employees moved to compel arbitration and stay this action under 9 U.S.C. § 3 (D.E. 16.) and CrossCountry moved to dismiss

---

[2] Plaintiff alleges that "CrossCountry's Transition Desk has also facilitated the diversion of customers from other mortgage companies, including but not limited to Freedom Mortgage Loans, Loan Depot, and Caliber Home Loans." (*Id.* ¶ 128.)

AnnieMac's original complaint. (D.E. 20.) On July 20, 2020, AnnieMac filed a six-count Amended Complaint alleging: aiding and abetting breach of fiduciary duty (Count One); violation of the Lanham Act, 15 U.S.C § 1125(a) (Count Two); tortious interference with current contractual and prospective economic relations (Count Three); unfair competition (Count Four); misappropriation of Trade Secrets in violation of New Jersey Uniform Trade Secrets Act ("NJTSA") (Count Five); and violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA") (Count Six). The Amended Complaint removed the Former Employees as parties to the action. (D.E. 25.) Subsequently, the Former Employees and CrossCountry moved to strike the Amended Complaint. (D.E. 27.) By way of Order dated October 23, 2020, this Court denied the Motion to Strike and dismissed as moot the Motion to Compel Arbitration/Stay and the Motion to Dismiss. (D.E. 41.) Said Order was affirmed by the Third Circuit Court of Appeals on October 8, 2021. (D.E. 53.) CrossCountry then moved to dismiss the Amended Complaint. (D.E. 57-1.) All subsequent briefing was filed. (D.E. 58, 59.) By way of Order dated May 4, 2022, this Court granted in part and denied in part CrossCountry's Motion to Dismiss.[3] (D.E. 86, 87.) Thereafter, AnnieMac filed a Second Amended Complaint. (D.E. 98.) CrossCountry now moves to dismiss only Count Four of the Second Amended Complaint, which alleges unfair competition. (D.E. 104.)

### III.  LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and

---

[3] Specifically, this Court held that: "Counts One, Two and Three alleging aiding and abetting breach of fiduciary duty, violation of the Lanham Act, 15 U.S.C § 1125(a), and tortious interference with current contractual and prospective economic relations shall proceed, while Counts Four, Five and Six unfair competition, misappropriation of trade secrets under the NJTSA, and violation of the DTSA are dismissed without prejudice." (D.E. 86 at 13, D.E. 87.)

conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (discussing the *Iqbal* standard). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Iqbal*, 556 U.S. at 679.

**IV. DISCUSSION**

Under New Jersey law, "[t]here is no distinct cause of action for unfair competition. It is a general rubric which subsumes various other causes of action." *Diversified Indus., Inc. v. Vinyl Trends, Inc.,* Civ. No. 13–6194, 2014 WL 1767471, at *6 (D.N.J. May 1, 2014) (quoting *C.R. Bard, Inc. v. Wordtronics Corp.*, 561 A.2d 694, 696 (N.J. Super. Ct. Law. Div. 1989)). Significantly, the common-law tort of unfair competition is "an 'amorphous' area of law and is generally defined as the 'misappropriation of one's property by another . . . which has some sort

of commercial or pecuniary value.'" *ADP, LLC v. Kusins*, 215 A.3d 924, 951 (N.J. Super. App. Div. 2019) (citing *Duffy v. Charles Schwab & Co.*, 97 F. Supp. 2d 592, 600 (D.N.J. 2000) (quoting *N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.*, 365 A.2d 956, 965 (Ch. Div. 1976)). Generally, the common law tort of unfair competition "espouse[s] more scrupulous standards of business fairness and commercial morality in trade." *Columbia Broad. Sys., Inc. v Melody Recordings, Inc.*, 341 A.2d 348, 352 (N.J. Super. Ct. App. Div. 1975) (citing *Q-Tips v. Johnson & Johnson*, 206 F. 2d 144, 145 (3d Cir. 1953), *cert. den'd* 346 U.S. 867 (1953)). "[T]he essence of unfair competition is [the violation of] fair play," typically involving unfair or deceptive practices. *Columbia Broad. Sys., Inc. v. Melody Recordings, Inc.*, 341 A.2d at 376. "New Jersey courts have deliberately kept the standard of liability somewhat adaptable, so that it may fit changing circumstances: 'the purpose of the law regarding unfair competition is to promote higher ethical standards in the business world. Accordingly, the concept is deemed as flexible and elastic as the evolving standards of commercial morality demand.'" *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 386 (3d Cir. 2016) (quoting *Ryan v. Carmona Bolen Home for Funerals*, 775 A.2d 92, 95 (N.J. Super. Ct. App. Div. 2001) (internal quotation marks and citations omitted)).

In its Second Amended Complaint, AnnieMac has sufficiently pled a claim for unfair competition that is not duplicative of its other claims. AnnieMac has pled substantial factual detail demonstrating that CrossCountry violated fair play and engaged in deceptive business practices that go beyond AnnieMac's other alleged claims. (SAC ¶¶ 119–129.) The Second Amended Complaint sets forth, *inter alia*, that CrossCountry: (1) urged the Former Employees and other AnnieMac employees to send confidential borrower lists and non-public borrower information to CrossCountry in order to comply with CrossCountry's loan-transition policies; (2) raided AnnieMac's employees in the Fair Lawn and Hackensack offices, leaving no employees at said

offices; (3) facilitated the systematic transfer of borrower information by deliberately deceiving customers using AnnieMac's "NMLS licensing information;" (4) failed to advise AnnieMac borrowers that a new lender was processing and closing their mortgages; (5) requested AnnieMac borrowers to provide their personal information without disclosing their affiliation with CrossCountry; (5) engaged in practices that unfairly/deceptively impeded AnnieMac's ability to close loans for customers who had completed AnnieMac loan applications and whose loans were in various stages of processing at AnnieMac; and (6) utilized a formalized loan diversion system that deceived and targeted not only AnnieMac borrowers, but other competitors in the mortgage industry such as Freedom Mortgage Loans, Loan Depot, and Caliber Home Loans. (SAC ¶¶ 119–129.) Indeed, AnnieMac has pled sufficient factual detail establishing the viability of an unfair competition claim that is distinct and broader than AnnieMac's other claims. The Second Amended Complaint provides additional factual allegations that CrossCountry's actions unfairly and deceptively impeded AnnieMac's ability to compete in the marketplace, which differs from AnnieMac's aiding and abetting breach of fiduciary duty claim (Count One) and tortious interference with current contractual and prospective economic relations claim (Count Three). (*See generally* SAC.) Moreover, AnnieMac's unfair competition claim arises out of CrossCountry's allegedly competitive practices that were unfair and against standards of fairness and social utility. Such allegations are not duplicative of AnnieMac's other claims. Accordingly, AnnieMac's claim for unfair competition (Count Four) shall remain.

**V.    CONCLUSION**

For the reasons set forth above, CrossCountry's motion is **DENIED**. Count Four alleging unfair competition shall proceed. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

8

Orig:   Clerk
cc:     Parties
        Leda D. Wettre, U.S.M.J.